United States District Court
Southern District of Texas

**ENTERED**

March 17, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|                                |     |                            |
|--------------------------------|-----|----------------------------|
| IVAN LESLIE,                   | §   |                            |
|                                | §   |                            |
| Plaintiff,                     | §   |                            |
|                                | §   |                            |
| v.                             | §   | CIVIL ACTION NO. H-16-0610 |
|                                | §   |                            |
| NOBLE DRILLING (U.S.) L.L.C.,  | §   |                            |
|                                | §   |                            |
| Defendant.                     | §   |                            |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ivan Leslie, is an African-American male who has been employed by defendant, Noble Drilling (U.S.) L.L.C., since January of 2013. Plaintiff brings this action against defendant for race discrimination in employment in violation of 42 U.S.C. § 1981.[1] Pending before the court is Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 23), Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and [Request for] Relief Under Rule 56(D) ("Plaintiff's Opposition") (Docket Entry No. 28), and defendant's objections to plaintiff's summary judgment evidence contained in Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Defendant's Reply") (Docket Entry No. 30). For the reasons stated below, defendant's objections to plaintiff's evidence will be overruled, Defendant's MSJ will be granted, plaintiff's motion for Rule 56(d) relief will be denied, and this action will be dismissed.

---

[1] Plaintiffs' Second Amended Complaint, Docket Entry No. 17.

## I. **Undisputed Facts**

Defendant provides contract drilling services for major and independent oil companies.[2] Plaintiff began working for defendant in January of 2013 as a motorman aboard the *Noble Don Taylor* drill ship.[3] When the *Noble Don Taylor* operated in the Gulf of Mexico, Plaintiff worked 21-day shifts — called "hitches" — followed by 21 days off.[4]

In April of 2104, plaintiff was working the overnight 12-hour shift with Patrick Peterson, a Caucasian motorman. Adam Klein, a Caucasian 3rd Engineer approached plaintiff with a rope tied into a hangman's noose. Plaintiff asked Klein about the noose and stated that he found it offensive, after which Klein untied the noose, and plaintiff walked away. Plaintiff completed his shift. A few hours after his shift ended plaintiff reported Klein's conduct to the drill ship's captain who reported it to defendant's corporate office in Sugar Land, Texas.[5]

Either the day that plaintiff reported Klein's conduct to the drill ship captain or the day thereafter, defendant opened an

---

[2]Declaration of Joe Knight ("Knight Declaration"), Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, p. 1 ¶ 3.

[3]Oral Deposition of Ivan Leslie ("Leslie Deposition"), Exhibit B to Defendant's MSJ, p. 77:3-5, Docket Entry No. 23-2, p. 36.

[4]Id. at p. 78:20-24, Docket Entry No. 23-2, p. 37.

[5]Id. at pp. 82:15-86:23, 94:3-98:11, 185:-186:25, Docket Entry No. 23-2, pp. 41-45, 53-57, 129-30.

-2-

investigation and brought plaintiff to its corporate office in Sugar Land, Texas, to meet with human resources personnel, including director, Joe Knight. Plaintiff told Knight that he did not want to work with Klein, and plaintiff alleges that he told Knight he was amenable to transferring to a drill ship in a northern or foreign location because employees working on drill ships in those locations receive increased compensation, but that if a higher paying option was not available he wanted to return to the *Noble Don Taylor*. Following his meeting with Knight, plaintiff went home for the remainder of his hitch but continued to receive his regular pay.[6] After interviewing Klein and other witnesses, defendant concluded that while unacceptable and inappropriate, Klein's behavior was not intended to threaten or harass plaintiff. Defendant nevertheless reprimanded Klein, stressing its intolerance for nooses and other potentially offensive conduct. Defendant also warned Klein that "a repeat of this behavior" would lead to additional disciplinary action, up to and including termination of employment.[7]

---

[6]<u>Id.</u> at pp. 24:18-24, 31:7-32:24, 94:18-103:6, 187:24-188:4, Docket Entry No. 23-2, pp. 17, 20-21, 53-62, 131-32; Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, pp. 3-4 ¶¶ 9-16. <u>See also</u> Plaintiff's Opposition, pp. 2-3, Docket Entry No. 28, pp. 6-7.

[7]Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, pp. 3-4 ¶¶ 12-13.

When the time for plaintiff's next hitch arrived, Knight reassigned plaintiff to the *Noble Bob Douglas*. Although plaintiff was employed at the same position with the same job duties and the same hourly rate of pay on the *Noble Bob Douglas* as on the *Noble Don Taylor*, plaintiff alleges that the reassignment caused his overall compensation to decrease because customer-paid bonuses were less for working on the *Noble Bob Douglas*.[8]

Over 18 months after being reassigned to the *Noble Bob Douglas*, plaintiff began working with Tyler Vickers, a Caucasian motorman. On or about February 28, 2016, Vickers used the "N-word" in plaintiff's presence approximately three times, following which plaintiff complained to management.[9] After confirming that Vickers had used the "N-word," defendant terminated Vickers' employment.[10] Aside from one occasion, in passing, approximately one day after plaintiff complained about Vickers' use of the racially derogatory term, plaintiff never saw Vickers again, and was never exposed to racially derogatory language.[11]

---

[8]*Id.* at 4 ¶¶ 15-16. <u>See also</u> Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 104:21-105:2, 106:5-18, Docket Entry No. 23-2, pp. 63-65; and Plaintiff's Opposition, pp. 2-3, Docket Entry No. 28, pp. 6-7.

[9]Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 113:1-11, 122:4-130:19, Docket Entry No. 23-2, pp. 72, 81-89; Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, p. 5 ¶ 18.

[10]Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, p. 5 ¶ 19.

[11]Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 131:20-133:17, Docket Entry No. 23-2, pp. 90-92.

## II.  **Defendant's Motion for Summary Judgment**

Plaintiff alleges that defendant discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 by subjecting him to a hostile work environment and by retaliating against him for complaining of race discrimination on two different occasions; first, in April of 2014 by reassigning him to a drill ship where he received lower customer-paid bonuses, and second in February of 2016 by subjecting him to increased surveillance.[12]   Defendant argues that it is entitled to summary judgment on plaintiff's race discrimination claims for hostile work environment and retaliation because plaintiff is unable to cite evidence capable of raising genuine issues of material fact for trial.[13]  Plaintiff disagrees.[14] Alternatively, plaintiff moves for additional discovery under Federal Rule of Civil Procedure 56(d).[15]

---

[12]Plaintiff's Second Amended Complaint, Docket Entry No. 17, pp. 5-7 ¶¶ 15-26.  Although plaintiff also alleges that "[o]ther forms of racial harassment at Defendants' facilities include[] disparate treatment of [plaintiff] with regard to the terms and conditions of employment, such as: job assignments, general work conditions and requirements, and the application of work rules and regulations," id. at p. 3 ¶ 10,  plaintiff has neither argued nor submitted any evidence capable of showing that his hostile work environment claim is based on any of these other forms of racial harassment.  See also Reply in Support of Defendant's Motion for Summary Judgment ("Defendant's Reply"), pp. 1 and 3, Docket Entry No. 30, pp. 5 and 7 (arguing that plaintiff has abandoned his disparate treatment claims by failing to brief or offer evidence on them).

[13]Defendant's MSJ, Docket Entry No. 23; Defendant's Reply, Docket Entry No. 30.

[14]Plaintiffs' Opposition, p. 4, Docket Entry No. 28, p. 8.

[15]Id. at pp. 13-14, Docket Entry No. 28, pp. 17-18.

## A. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). If the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that genuine issues of material fact exist for trial. Id. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

-6-

**B.    Applicable Law**

Section 1981 of Title 42 prohibits employers from discriminating against an employee on the basis of race. 42 U.S.C. § 1981. "Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981 . . ., are governed by the same analysis as that employed for such claims under Title VII[, 42 U.S.C. § 2000e-2(a)(1)]." DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). A claim of employment discrimination can be proven through direct or circumstantial evidence. Russell v. McKinney Hospital Venture, 235 F.3d 219, 222 (5th Cir. 2000). Plaintiff does not argue that this is a direct evidence case. Instead, plaintiff argues that he has satisfied the requirements needed to prevent summary judgment in a case based on circumstantial evidence.[16] Circumstantial evidence cases are analyzed pursuant to the framework established in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). This framework requires the plaintiff to demonstrate a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action at issue. If the defendant articulates such a reason, the burden shifts back to the plaintiff to cite evidence capable of creating a genuine issue of material fact for trial that the employer's stated reason is not the true reason but, instead, a pretext for discrimination. Id. at 1824-26. See also Reeves, 120 S. Ct. at 2106 (restating the McDonnell Douglas framework).

---

[16]Id. at pp. 5 and 12, Docket Entry No. 28, pp. 9 and 16.

C.   **Application of the Law to the Undisputed Facts**

   1.   <u>Plaintiff Fails to Establish a Prima Facie Case for His
        Hostile Work Environment Claim</u>

   Plaintiff alleges that throughout his

   employment with Defendants, he has been discriminated
   against on the basis of his race by being subjected to a
   hostile working environment in the form of racial
   harassment. This racial harassment includes, but is not
   limited to, demeaning and derogatory racial remarks by
   white employees and overtly racially-motivated verbal
   abuse of [plaintiff] by white employees. There have also
   been racial displays intended to intimidate and harass
   [plaintiff].[17]

   To establish a <u>prima facie</u> case of race based hostile work

environment plaintiff must present evidence capable of establishing

that: (1) he belonged to a protected class; (2) he was subject to

harassment; (3) the harassment was based on his race; (4) the

harassment affected a term, condition, or privilege of his

employment; and (5) the employer knew or should have known of the

harassment and failed to take prompt remedial action.  <u>Ramsey v.</u>

<u>Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002).

   Defendant argues that plaintiff is unable to establish a prima

facie case of race discrimination because he cannot show that he

was subjected to harassment based on race that was sufficiently

severe or pervasive to affect a term, condition, or privilege of

his employment, and because defendant took prompt remedial action.[18]

Plaintiff argues that defendant's motion for summary judgment on

---

   [17]Plaintiff's Second Amended Complaint, Docket Entry No. 17,
p. 3 ¶ 10.

   [18]Defendant's MSJ, pp. 11-15, Docket Entry No. 23, pp. 17-21.

his hostile work environment claim should be denied because he "has established that he was subjected to severe or pervasive conduct when a management official presented a hangman's noose to [him] combined with threatening commentary,"[19] and that he "has provided ample evidence that [defendant] failed to take prompt remedial measures following his complaints of racial discrimination."[20]  The parties do not dispute that plaintiff has presented evidence satisfying the first three elements of a prima facie case of race based hostile work environment, i.e., that he belongs to a protected class, he was subject to harassment, and the harassment was based on his race.  At issue is whether the harassment affected a term, condition, or privilege of plaintiff's employment; and whether the defendant took prompt remedial action.[21]

> (a)  Plaintiff Fails to Cite Evidence Capable of Showing that the Harassment He Suffered Affected a Term, Condition, or Privilege of Employment

To establish a prima case for his hostile work environment claim plaintiff must show that he experienced harassment that was

---

[19]Plaintiff's Opposition, p. 4, Docket Entry No. 28, p. 8.

[20]Id.

[21]Id., at p. 6, Docket Entry No. 28, p. 10 ("Defendant avers that [plaintiff] is unable to establish a genuine issue of material fact on the fourth and fifth elements.  This is simply not the case.").  See also Defendant's MSJ, pp. 11-15, Docket Entry No. 23, pp. 17-21; Defendant's Reply, pp. 3-7, Docket Entry No. 30, pp. 7-11.

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey, 286 F.3d at 268 (citing Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 371 (1993)(quoting Meritor Savings Bank, FSB v. Vinson, 106 S. Ct. 2399, 2405 (1986))). To be actionable the harassment must have created an environment that was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998)(citing Harris, 114 S. Ct. at 370-71). Courts look to the totality of the circumstances to determine whether the objective element is satisfied, considering factors such as the frequency of the conduct, its severity, the degree to which it is physically threatening or humiliating as opposed to being a mere offensive utterance, and the degree to which it unreasonably interferes with an employee's work performance. Id. (citing Harris, 114 S. Ct. at 371). The Supreme Court has cautioned lower courts considering hostile work environment claims not to view the record in piecemeal fashion, but to look at "all the circumstances" when determining "whether an environment is 'hostile' or 'abusive.'" Harris, 114 S. Ct. at 371.

Plaintiff's hostile work environment claim is based on evidence that

> [i]n late April 2014, [plaintiff] was working the overnight 12-hour shift with Patrick Peterson, a

Caucasian motorman.  Adam Klein, a newly hired Caucasian 3rd Engineer, approached [plaintiff] with a rope that was tied into a hangman's noose.  While presenting this rope directly to [plaintiff], Mr. Klein stated that he used these types of nooses for "wild animals."  Mr. Klein further threatened [plaintiff] by stating that [plaintiff] should put the noose around [plaintiff's] neck and "jump off the ship."[22]

Citing <u>Bell v. Ingalls Shipbuilding Inc.</u>, 207 F.3d 657, 2000 WL 122384 (5th Cir. January 4, 2000) (per curiam) (unpublished table decision), plaintiff argues that although he was presented with a rope tied into a hangman's noose only once, that single incident was sufficiently severe to preclude the court from granting defendant's motion for summary judgment.[23]  In <u>Bell</u>, 207 F.3d 657, 2000 WL 122384, at *1, the Fifth Circuit recognized that "[t]he making of nooses is at least arguably objectively offensive, as it evokes the image of race-motivated lynching," and that "[t]he frequent making of nooses, coupled with the presence of allegedly offensive racial remarks and the presence of K[u] K[lux] K[lan]

---

[22]Declaration of Ivan Leslie ("Leslie Declaration"), Exhibit A in Appendix to Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 2 ¶ 2, Docket Entry No. 29-1, p. 3 ¶ 2.  <u>See also</u> Plaintiff's Opposition, pp. 6-8, Docket Entry No. 28, pp. 10-12 (arguing only that the Klein "hangman's noose" incident affected a term, condition, or privilege of his employment); Defendant's Reply, p. 3, Docket Entry No. 30, p. 7 (arguing that plaintiff has abandoned any hostile work environment claim based on Vickers' conduct, <u>i.e.</u>, use of a racially derogatory term approximately three times in February of 2016, by failing to argue either that that conduct affected a term, condition, or privilege of his employment, or that defendant failed to take prompt remedial action to end that conduct).

[23]Plaintiff's Opposition, p. 7, Docket Entry No. 28, p. 11.

-11-

graffiti at the worksite raise a fact issue regarding whether the work atmosphere . . . was racially hostile." Citing <u>Jones v. Dallas County</u>, 47 F.Supp.3d 469, 492 (N.D. Tex. 2014), and <u>Dickey v. Northrop Grumman Ship System, Inc.</u>, No. 1:06-CV-781, 2007 WL 4365338, at * 6 (S.D. Miss. December 7, 2007), two cases that relied on <u>Bell</u> to find evidence of similar conduct sufficient to defeat a defendant's motion for summary judgment, plaintiff argues that the facts of this case are analogous to those in <u>Bell</u> because

> [plaintiff's] exposure to the noose was accompanied by other, similarly offensive conduct. . . . Specifically, Klein physically presented a discernable hangman's noose directly to [plaintiff] personally. Klein further posed a threat of violence when he stated he used nooses, such as the one presented to [plaintiff], for wild animals. And, that [plaintiff] should place the noose over his neck and jump off the side of the oilrig. As a result, the presence of a noose aimed at [plaintiff] combined with Klein's threatening language and conduct is sufficient to create a genuine issue of material fact concerning whether [plaintiff's] employment was affected.[24]

Asserting that none of the cases on which plaintiff relies involved a single incident of racially offensive conduct but, instead, all involved evidence of racially offensive conduct that occurred repeatedly for longer periods of time, defendant argues that the isolated incident involving Klein was not sufficiently severe to affect a term, condition, or privilege of plaintiff's employment as a matter of law. Defendant also argues that even if Klein's conduct was sufficiently severe to create a racially

---

[24]<u>Id.</u> at pp. 7-8, Docket Entry No. 28, pp. 11-12.

hostile work environment that defendant is entitled to summary judgment because the undisputed evidence demonstrates that defendant promptly took remedial action that ended the harassment.[25]

Viewing the evidence in the light most favorable to plaintiff, the court concludes that he has not presented evidence from which a reasonable jury could conclude that Klein's conduct, albeit both objectively and subjectively offensive, was "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." Ramsey, 286 F.3d at 269. The undisputed evidence shows that Klein approached plaintiff with a rope tied as a hangman's noose only once, and that when plaintiff asked Klein about the noose and indicted that he found it offensive, Klein untied the noose, and plaintiff walked away:

> Q.    . . . Now with respect to Adam Klein, there was one incident; is that correct?
>
> A.    Correct.
>
>               . . .
>
> Q.    Okay.  And did you physically see Adam Klein untie the noose?
> A.    Yep.
>
> Q.    Okay.  So as soon as you indicated that you were uncomfortable with it, Adam Klein untied the noose; is that right?
>
> A.    He presented it to me.  I asked him why did he tie the noose.  And he explained it can be used for all type of things.

---

[25]Defendant's Reply, pp. 1, 3-7, Docket Entry No. 30, pp. 5, 7-11.

-13-

Q.  Do you know whether Adam Klein was actually using the rope to hold something up on the ship?

A.  Yes, I do know.

Q.  What was he doing with it?

A.  He wasn't using it to hold anything.

Q.  Okay.  But after Adam Klein approached you with the rope and you asked him why he had it, he then physically untied it in front of you; is that correct?

A.  Right.

Q.  Okay.

A.  He was over there tying it and came over and brought it to me.

Q.  Okay.  And then you indicated you were uncomfortable with it and he untied it.

A.  Oh, I don't -- I walked away.

Q.  Okay.  You testified just a minute ago that you physically saw him untie the noose.

A.  Right.  And I walked away.

Q.  Okay.  And so the incident with Adam Klein, you just stated that it happened on one occasion; is that right?

A.  With the noose, yes.[26]

The facts of this case, in which plaintiff complains about a single incident in which Klein approached him with a rope tied into a hangman's noose and allegedly told plaintiff to put the noose around his neck and jump off the ship, although both objectively and subjectively offensive, are distinguishable from the facts in the cases on which plaintiff relies because those cases all

_____

[26]Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 185:8-186:21; Docket Entry No. 23-2, pp. 129-130.

involved frequent making of nooses or displays of nooses for longer periods of time accompanied by other racially offensive conduct such as graffiti, caricatures, and/or derogatory epithets.   For example, in Bell the Fifth Circuit found sufficient to defeat summary judgment evidence of "the frequent making of nooses, coupled with the presence of allegedly offensive racial remarks and the presence of KKK graffiti at the worksite." 207 F.3d 657, 2000 WL 122384 *1 (emphasis added).  Like Bell, Dickey, 2007 WL 4365338, at *7-*8, involved evidence of "various incidents where nooses were fashioned and displayed" in the work place coupled with evidence of the frequent and on-going use of racially derogatory epithets.  Id. at *7.  Plaintiff also relies on Jones, 47 F.Supp.3d at 469, in which the court questioned whether the hanging of a black soda can from a white string would alone be sufficient to create a hostile work environment, id. at 491, and ultimately concluded that this evidence was sufficient to raise genuine issues of material fact for trial on the plaintiff's hostile work environment claim because the black can hung at the work site for an extended period of time (up to six months), and was accompanied by other incidents of racially harassing or offensive conduct including caricatures, cartoons, and graffiti.  Id. at 494.  See also Wesley v. Yellow Transportation, Inc., 2008 WL 294526, at *19 (N.D. Tex. February 4, 2008) (holding that evidence of at least three instances in which plaintiff observed nooses displayed in the workplace, together with

-15-

evidence of Ku Klux Klan graffiti and offensive racial remarks were sufficient to raise genuine issues of material fact for trial).

Plaintiff has failed to cite and the court has failed to find any case in which a single incident similar to that evidenced here has been found sufficiently severe to affect a term, condition, or privilege of a plaintiff's employment. Moreover, courts have granted summary judgment to defendants in cases where a noose was observed in the workplace, but exposure to the noose was isolated or of short duration, and was not accompanied by recurring instances of other racially offensive conduct. See Brooks v. Firestone Polymers, LLC, 70 F.Supp.3d 816, 860-61 (E.D. Tex. 2014), aff'd 640 F. App'x 393, 400 (5th Cir. March 2, 2016)(single incident in which the plaintiff found a miniature hangman's noose inside his hard hat at work was not sufficient to alter the terms, conditions, or privileges of his employment); Filer v. Donley, No. 4:10-CV-310-A, 2011 WL 196169, at *7 (N.D. Tex. January 20, 2011), rev'd on other grounds, 690 F.3d 643 (5th Cir. 2012)(granting summary judgment against employee whose supervisor publicly displayed noose in his office but disposed of it as soon as he heard that the plaintiff was offended by it because no rational jury could find an abusive working environment based on those facts); Jimerson v. Garrett Aviation Services, LLC, No. H-09-0790, 2010 WL 5067692, at *1, 4-5 (S.D. Tex. December 6, 2010) (rope in the shape of a noose hanging from the rafters at the

-16-

workplace that a coworker stated was to "wrap around [the p]laintiff's neck," was insufficient to support a hostile work environment claim, as the incident was isolated and unaccompanied by physical conduct, and the plaintiff did not flee or seek help).

The cases cited by the parties show that a combination of racial epithets, racially-charged graffiti, and physical threats such as nooses in the workplace may be sufficient to raise a fact question for trial on a hostile work environment claim, but that a single incident of racially offensive conduct such as that experienced by plaintiff in April of 2014 is not sufficient to raise a fact issue for trial. The undisputed evidence shows that when Klein presented a rope tied as a hangman's noose to plaintiff and allegedly made one racially offensive remark, plaintiff did not act threatened and his work performance did not suffer. To the contrary, plaintiff testified in his deposition that when the incident occurred he told Klein that he found the noose offensive, and Klein responded by untying the noose, and plaintiff walked away.[27]  Plaintiff finished his shift and only then reported the incident to the captain.[28]  While a reasonable jury could find that Klein's conduct was both objectively and subjectively offensive, merely offensive conduct is not actionable. See Harris, 114 S. Ct. at 370-71. Because plaintiff fails to offer evidence that Klein's

_____

[27]Id.

[28]Id. at p. 94:3-20, Docket Entry No. 23-2, p. 53.

-17-

conduct amounted to anything more than an isolated incident of short duration that did not affect his work performance, a reasonable jury could not find that Klein's conduct was sufficiently severe or pervasive to alter the terms, conditions, or privileges of his employment.  Because plaintiff has failed to cite evidence from which a reasonable jury could conclude that Klein's racially offensive conduct was sufficiently severe or pervasive to affect a term, condition, or privilege of his employment, plaintiff has failed to cite evidence capable of establishing this element of the prima facie case for his hostile work environment claim.

> (b)   Plaintiff Fails to Cite Evidence Showing that the Defendant Failed to Take Prompt Remedial Action

Plaintiff does not dispute that defendant acted promptly in response to his report of Klein's offensive conduct.  Instead, quoting Skidmore v. Precision Printing & Packaging Inc., 188 F.3d 606, 615-16 (5th Cir. 1999), plaintiff argues that

> "[p]rompt remedial action must be reasonably calculated to end the harassment," and "not every response by an employer will be sufficient to discharge its legal duty." . . . "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment."[29]

Plaintiff argues that

> Defendant failed to take prompt remedial measures to deter the harassing conduct.   Here, Defendant merely

---

[29]Plaintiff's Opposition, p. 8, Docket Entry No. 28, p. 12.

provided the harasser, Klein, with a slap on the wrist
with a written warning in direct contravention of
Defendant's well-established policy pertaining to nooses.
Specifically, Defendant has consistently advised that any
employee involved with a noose would be terminated
immediately.   However, Defendant's deviation of its own
policy with Klein has acquiesced the conduct of racial
epithets, namely nooses.   As a result, Defendant has
failed to take prompt remedial action to "reasonably" end
the racial[] harassment.   Therefore, Defendant is not
entitled to judgment as a matter of law on [plaintiff's]
racial[] harassment claim[].[30]

Defendant argues that the undisputed evidence shows "that it

promptly took measures designed to end the alleged harassment,

namely reprimanding Klein and transferring [plaintiff] — pursuant

to what [defendant] believed [plaintiff] desired — to another

rig."[31]   Quoting <u>Carmon v. Lubrizol Corp.</u>, 17 F.3d 791, 795-96 (5th

Cir. 1994)(per curiam), defendant argues that it

did what an employer should do when faced with
allegations of a racially-hostile work environment:

It took the allegations seriously, it
conducted prompt and thorough investigations,
and it immediately implemented remedial and
disciplinary measures based on the results of
such investigations.   Holding a company such
as Noble liable after it has taken such action
would produce truly perverse incentives
benefitting no one, least of all actual or
potential victims of [racial] harassment.[32]

---

[30]<u>Id.</u> at p. 9, Docket Entry No. 28, p. 13.

[31]Defendant's Reply, p. 6, Docket Entry No. 30, p. 10.

[32]<u>Id.</u> (quoting <u>Carmon</u>, 17 F.3d at 795-96).

-19-

While in Skidmore, 188 F.3d at 615, the Fifth Circuit acknowledged that what constitutes prompt remedial action is necessarily a fact-specific inquiry, the Fifth Circuit recognized that it "has often found that an employer's response to employee behavior constituted prompt remedial action as a matter of law." Id. at 616. In Skidmore the Fifth Circuit held that instructing the harasser to leave the complainant alone and moving the complainant to a new shift constituted prompt remedial action as a matter of law because it ended the harassment. Id. In Williams-Boldware v. Denton County, Texas, 741 F.3d 635, 640-42 (5th Cir.), cert. denied, 135 S. Ct. 106 (2014), the Fifth Circuit similarly recognized the fact specific nature of what constitutes prompt remedial action, and held that reprimanding the harasser, requiring the harasser to attend training, and transferring the complainant to a new division constituted prompt remedial action as a matter of law.

The undisputed evidence shows that when defendant received plaintiff's report of Klein's racially offensive conduct, defendant promptly responded by removing plaintiff from the Noble Don Taylor, and transporting him to its corporate offices in Sugar Land, Texas, to initiate an investigation. In Sugar Land Plaintiff was interviewed as part of the investigation, and afterwards was not returned to the Noble Don Taylor to finish his hitch, but instead was allowed to go home with pay. Moreover, plaintiff testified that after he reported Klein's conduct, he never saw Klein again:

-20-

Q.   Okay. Now, after you informed Noble, including the
     captain, that -- no incident with Adam Klein ever
     occurred again; is that correct?

A.   No.

Q.   Okay. Sorry. I think that was unclear.
     Is it correct to say that after the incident with
     Adam Klein and after you complained about it, there
     was never another incident involving Adam Klein
     that you found offensive?

A.   Besides him keeping his job, no.

Q.   Okay. Do you know whether Adam Klein kept his job?

A.   Yes.

Q.   Okay. How do you know that?

A.   Because I was told.

Q.   By whom?

A.   Pat, Reginald Green

Q.   Okay. Now, aside from the fact that you were
     offended by Adam Klein keeping his job, was there
     ever another incident involving Adam Klein that you
     found offensive?

A.   No, not that I know of.

Q.   Because you never saw him again after the incident
     --

A.   Right.

Q.   -- and after you left the rig; is that right?

A.   Right.

Q.   And Noble immediately removed you from the
     situation.

A.   Another day or two.

-21-

Q.   But they didn't require you to finish out the rest
     of your hitch; is that correct?

A.   Right.[33]

Plaintiff argues that "[d]efendant failed to take prompt remedial measures to deter the harassing conduct,"[34] but fails to offer any evidence that he ever again experienced such harassment from Klein or anyone else working for the defendant.   Instead, plaintiff asserts that Klein's reprimand was a "direct contravention of [d]efendant's well-established policy pertaining to nooses."[35]   But plaintiff has neither argued nor cited any evidence showing either that defendant had a policy pertaining to nooses, or that a deviation from policy negates the effectiveness of the remedial actions taken.   In <u>Turner v. Baylor Richardson Medical Center</u>, 476 F.3d 337, 346 (5th Cir. 2007), the Fifth Circuit stated:

> A defendant's failure to follow its own policy is not
> probative of discriminatory animus in absence of proof
> that the plaintiff was treated differently than other
> non-minority employees because [anti-discrimination laws]
> do[] not protect employees from the arbitrary employment
> practices of their employer, only their discriminatory
> impact.

Nor has plaintiff cited any authority in support of his contention that prompt remedial action required defendant to take stronger

---

[33]Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 186:22-188:4; Docket Entry No. 23-2, pp. 130-132.

[34]Plaintiff's Opposition, p. 9, Docket Entry No. 28, p. 13.

[35]<u>Id.</u>

-22-

disciplinary action against Klein. See Williams-Boldware, 741 F.3d at 640 ("Employers are not required to impose draconian penalties upon the offending employee in order to satisfy this court's prompt remedial action standard."); Waymire v. Harris County, Texas, 86 F.3d 424, 429 (5th Cir. 1996) ("one instance of poor judgment does not require that [the offending employee] be fired").

Because the undisputed evidence establishes that when plaintiff complained of Klein's conduct, defendant took prompt remedial action, and because plaintiff acknowledges that defendant's action prevented the harassment from recurring, plaintiff has failed to cite evidence capable of establishing the element of his prima facie case that requires him to show that the defendant failed to take prompt remedial action reasonably calculated to end the harassment. See Skidmore, 188 F.3d at 616; Williams-Boldware, 741 F.3d at 640.

### 2. Plaintiff Fails to Raise a Fact Issue for Trial on Either of His Two Retaliation Claims

Plaintiff alleges that defendants retaliated against him for complaining of Klein's racially offensive conduct in April of 2014 by transferring him to a drill ship with lower customer-paid bonuses, and for complaining about Vickers' use of a racially

derogatory term in February of 2016 by subjecting him to increased surveillance via a closed circuit camera.[36]

To establish a prima facie case of retaliation under § 1981, plaintiff must show that (1) he participated in an activity protected by § 1981; (2) his employer took a materially adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014).   If plaintiff establishes a prima facie case, the burden then shifts to defendant to offer a legitimate, nondiscriminatory reason for taking the adverse action at issue.   Id. at 317-18.   "If a legitimate reason is proffered, the burden returns to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation."   Id. at 318. Defendant does not dispute that plaintiff engaged in a protected activity by complaining of racially offensive conduct in April of 2014 and in February of 2016.

(a)   Reassignment to a Less Desirable Location in 2014

Plaintiff alleges that after complaining of Klein's racially offensive conduct in April of 2014, "[d]efendant retaliated against

---

[36]Plaintiff's Second Amended Complaint, Docket Entry No. 17, pp. 5-7 ¶¶ 15-26.

him by transferring him to a less desirable work location,"[37] _i.e._,
the _Noble Bob Douglas_.   Defendant argues that plaintiff's
retaliation claim based on his reassignment to the _Noble Bob
Douglas_ fails because plaintiff is unable to cite evidence capable
of establishing either the causal connection element of a prima
facie case or that defendant's nondiscriminatory reason for
reassigning plaintiff was not true but, instead, a pretext for
retaliation.[38]


### (1)   Plaintiff Has Established a Prima Facie Case

The undisputed evidence establishes that approximately three
weeks after plaintiff complained of Klein's racially offensive
conduct in April of 2014, defendant transferred plaintiff from the
_Noble Don Taylor_ to the _Noble Bob Douglas_.[39]   Although the
undisputed evidence also establishes the plaintiff's job title,
duties, and hourly rate of pay remained the same, plaintiff
contends that the _Noble Bob Douglas_ was a less desirable assignment
because customer-paid bonuses available to employees of the _Noble_

---

[37]_Id._ at p. 4 ¶ 13.  See also Plaintiff's Opposition, pp. 9-10,
Docket Entry No. 28, pp. 13-14.

[38]Defendant's MSJ, pp. 15-18, Docket Entry No. 23, pp. 21-24;
Defendant's Reply, p. 9, Docket Entry No. 30, p. 13.

[39]Plaintiff's Opposition, p. 3, Docket Entry No. 28, p. 7
(citing Leslie Declaration, Exhibit A in Appendix to Plaintiff Ivan
Leslie's Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment, p. 2 ¶ 5, Docket Entry No. 29-1, p. 3 ¶ 5).

*Bob Douglas* were less than those available to employees of the *Noble Don Taylor*.[40]   Defendant does not dispute that the customer-paid bonuses available to employees of the *Noble Bob Douglas* were less than those available to employees of the *Noble Don Taylor*, and has not argued that reassignment to a drill ship with lower customer-paid bonuses was not a materially adverse employment action.   Instead, defendant argues and has submitted uncontradicted evidence that Knight — the personnel director who made the decision to reassign plaintiff — did so based on his beliefs that plaintiff did not want to return to the *Noble Don Taylor*, and that the reassignment would be a lateral transfer.[41]   Defendant has also cited uncontradicted evidence that Knight did not know that the customer paid bonuses available on the two drill ships differed.[42]

Plaintiff's evidence that he complained about Klein's racially offensive conduct, and that approximately three weeks later he was reassigned to a drill ship where he received lower bonuses than he

---

[40]*Id.*   *See also* Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 67:10-69:9, 174:23-180:18, Docket Entry No. 23-2, pp. 26-28, 121-122.

[41]Defendant's MSJ, pp. 16-17, Docket Entry No. 23, pp. 22-23 (citing Knight Declaration, Exhibit A to Defendant's MSJ, ¶¶ 10-11 and 15, Docket Entry No. 23-1, pp. 3-4, ¶¶ 10 and 15; and Knight's hand written notes from his May 1, 2014, interview with plaintiff, Exhibit A-3 to Defendant's MSJ, p. 14, Docket Entry No. 23-1, p. 25).   *See also* Defendant's Reply, pp. 9-10, Docket Entry No. 30, pp. 13-14.

[42]Defendant's MSJ, p. 16, Docket Entry No. 23, p. 22 (citing Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, p. 4, ¶ 16).   *See also* Defendant's Reply, pp. 9-10, Docket Entry No. 30, pp. 13-14.

had received before his reassignment is sufficient to satisfy the
minimal requirements for establishing the causation element of a
prima facie case of retaliation.  See Haire v. Board of Supervisors
of Louisiana State University Agricultural and Mechanical College,
719 F.3d 356, 368 (5th Cir. 2013) (finding period of three months,
coupled with gradual changes in employee's duties, enough to
satisfy the third prong of a prima facie case); Clark County School
District v. Breeden, 121 S. Ct. 1508, 1511 (2001) (noting that
"very close" temporal proximity between protected activity and
allegedly retaliatory conduct is enough to make a prima facie
showing of causation).

### (2) Defendant Has Stated a Legitimate, Non-Discriminatory Reason for Plaintiff's Transfer to the *Noble Bob Douglas*

Because plaintiff has established a prima facie case,
defendant must proffer evidence of a legitimate, non-discriminatory
reason for reassigning him to the *Noble Bob Douglas*.  Willis, 749
F.3d at 317-18.  Asserting that "Knight testified that he assigned
[plaintiff] to the *Noble Bob Douglas* 'based on [his] belief . . .
that [plaintiff] did not desire to return to the *Noble Don Taylor*
even if [defendant] transferred Klein to another rig,'"[43] defendant
argues that "Knight's honest belief — *even if mistaken* — is
evidence of the lack of causation or of a legitimate,

---

[43]Defendant's Reply, p. 9, Docket Entry No. 30, p. 13.

nondiscriminatory reason for an employment action."[44]   If true, defendant's stated reason for reassigning plaintiff from the *Noble Don Taylor* to the *Noble Bob Douglas* would qualify as a legitimate, nondiscriminatory reason for the adverse employment action at issue.   Since defendant has met its burden of articulating a legitimate, nondiscriminatory reason for reassigning plaintiff to the *Noble Bob Douglas,* the presumption of discrimination created by plaintiff's <u>prima facie</u> case disappears, and the burden shifts to plaintiff to produce evidence capable of establishing that the defendant's stated reason for his reassignment was not true but, instead, a pretext for retaliation.   <u>Id.</u> at 318.

### (3)   Plaintiff Fails to Cite Evidence Capable of Establishing Pretext

The Fifth Circuit has held that with respect to a retaliation claim "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 409 (5th Cir. 1999).   But temporal proximity alone is not sufficient to prove retaliation.   <u>See Strong v. University Healthcare System, L.L.C.</u>, 482 F.3d 802, 807-08 (5th Cir. 2007) (holding three-and-a-half months between protected activity and termination insufficient to establish retaliation).   Plaintiff may

---

[44]<u>Id.</u>

raise a genuine issue of discriminatory intent by producing evidence from which a reasonable jury could decide that defendant's legitimate, non-discriminatory reason for assigning him to the *Noble Bob Douglas* is false or unworthy of credence and is, instead, a pretext for retaliation for having engaged in a protected activity, i.e., for having complained of Klein's racially offensive conduct. See Willis, 749 F.3d at 318; Reeves, 120 S. Ct. at 2106.

Plaintiff argues that defendant's evidence is flawed because even though he asked not to work with Klein anymore, he never asked to be transferred to a lesser-paying drill ship. Asserting that defendant's contention that he told Knight he did want to return to the *Noble Don Taylor* even if Klein was no longer there is categorically false, plaintiff cites his own declaration as evidence that he told defendant that he was only interested in transferring to a foreign rig or a rig in the Pacific Northwest because working on those rigs would entitle him to increased compensation.[45]  In pertinent part plaintiff declares:

> 3.       . . . During an in-person meeting with Joe Knight, Noble's Director — Personnel, I explained the circumstances surrounding Mr. Klein presenting the noose and his accompanying threatening comments.  I further communicated that I did not want to work with Mr. Klein in the future.  At no time during this or any meeting did I communicate a desire not to return to the Noble Don Taylor.

---

[45]Plaintiff's Opposition, p. 12, Docket Entry No. 28, p. 16 (citing Leslie Declaration, Exhibit A in Appendix to Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 2 ¶¶ 3-4, Docket Entry No. 29-1, p. 3 ¶¶ 3-4).

>    Additionally, I never requested to be transferred
>    to the Noble Bob Douglas.

4.     The only conversation I had with Noble
management concerning the possibility of a
potential transfer, was in reference to drill ships
located in foreign locations or in the Pacific
Northwest. These drill ships were the only option
I expressed to Noble because of the increased
compensation for individuals that work on those
ships. I further explicitly expressed that if
these options were unavailable, I would like to
remain assigned on the Noble Don Taylor.[46]

Plaintiff argues that this evidence is sufficient to rebut defendant's legitimate, nondiscriminatory reason for his reassignment to a lesser paying rig.[47]

The evidence that plaintiff has cited is not sufficient to raise a genuine issue of material fact for trial that the defendant's stated reason for reassigning him to the *Noble Bob Douglas* was not true, but was instead a pretext for retaliation. First, plaintiff has failed to offer evidence contradicting Knight's testimony that he had no knowledge that reassigning plaintiff to the *Noble Bob Douglas* would impact plaintiff's eligibility for customer-paid bonuses. Knight declared:

>    When I assigned [plaintiff] to the *Noble Bob Douglas*, I
>    had no knowledge regarding the availability, terms and
>    conditions, amount, or range of any discretionary bonus
>    paid by Noble's customers to Noble for distribution to
>    Noble's employees on either the *Noble Don Taylor* or the

----

[46]Leslie Declaration, Exhibit A in Appendix to Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 2 ¶¶ 3-4, Docket Entry No. 29-1, p. 3 ¶¶ 3-4.

[47]Plaintiff's Opposition, p. 12, Docket Entry No. 28, p. 16.

> *Noble Bob Douglas*. Instead, in transferring [plaintiff],
> I solely relied on my belief, based on [plaintiff's]
> comments, that [plaintiff] did not want to return to the
> *Noble Don Taylor*, that [plaintiff] would be employed in
> the same position and the same salary on the new rig; and
> that the *Noble Bob Douglas* was identical in composition
> to the *Noble Don Taylor*.[48]

Second, plaintiff's declaration that he at no time communicated a desire not to return to the Noble Don Taylor, is contradicted both by his briefing in which he argues that he told Knight he did not want to return to the *Noble Don Taylor* if Klein was still there,[49] and by his deposition testimony that he told not only Knight, but also, Rainey May, that he did not want to return to the *Noble Don Taylor* if Klein was still there.[50] Since plaintiff fails to present any evidence that Klein was not still on the *Noble Don Taylor* when he was reassigned to the *Noble Bob Douglas*, plaintiff has failed to cite evidence from which a reasonable jury could conclude that Knight did not reasonably believe that plaintiff did not want to return to work on the *Noble Don Taylor*.

Because plaintiff has failed to present evidence capable of contradicting defendant's evidence that Knight had no knowledge that reassigning plaintiff to the *Noble Bob Douglas* would impact

---

[48]Knight Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 23-1, p. 4 ¶ 16.

[49]Plaintiff's Opposition, pp. 2-3, 12, Docket Entry No. 28, pp. 6-7, 16.

[50]Leslie Deposition, Exhibit B to Defendant's MSJ, pp. 175:17-178:23, Docket Entry No. 23-2, pp. 120-22.

plaintiff's eligibility for customer-paid bonuses, or that Knight did not reasonably believe that plaintiff did not want to return to work on the *Noble Don Taylor* because Klein was still there, plaintiff has failed to produce evidence capable of establishing that the defendant's stated reason for his reassignment was not true but, instead, a pretext for retaliation.

(b)   Increased Surveillance in 2016

Plaintiff argues that

[t]he gravamen of [his] retaliation claims are embedded in the adverse action[s] [d]efendant took against him following his complaints of discrimination. Specifically, [plaintiff] avers that he was placed under increased surveillance shortly after his complaints of disparate treatment and racial harassment.[51]

Plaintiff argues that

[c]ontrary to [d]efendant's contentions, its increase in surveillance over [him] amount[s] to more than trivial harms, and rises to the level of materially adverse action that is actionable under his Section 1981 retaliation claim.[52]

Defendant argues that plaintiff fails to establish a prima facie case of retaliation based on his purportedly increased surveillance because "(1) [plaintiff] offers nothing but his own subjective belief that [defendant] subjected him to increased surveillance after he had complained about Vickers; and

---

[51]Plaintiff's Opposition, p. 9, Docket Entry No. 28, p. 13.

[52]Id. at pp. 9-10, Docket Entry No. 28, pp. 13-14.

(2) increased surveillance is not an adverse action as a matter of law."[53]

The only evidence plaintiff cites in support of his contention that he was placed under increased surveillance following the complaint of race discrimination that he made in February of 2016 is ¶ 8 of his own declaration.[54] Plaintiff states:

> Approximately a few days after my complaint concerning Mr. Vickers' racially derogatory comments, I visibly noticed the engine room surveillance camera was constantly being moved to watch me during my shifts. This was an uncommon occurrence that did not commence until my complaints of discrimination. As a result, I felt that I was under increased and heightened level of surveillance. Notably, Mr. Balducci and other Noble Bob Douglas management officials controlled the engine room surveillance cameras.[55]

Defendant objects to ¶ 8 of plaintiff's declaration because plaintiff has "established no personal knowledge regarding who controls the engine room surveillance camera (or, indeed, whether the camera is capable of movement)."[56] Citing Federal Rule of Civil Procedure 56(c)(4), defendant argues that "[a]bsent a sufficient foundation demonstrating that [plaintiff] has personal knowledge regarding who controls the engine room surveillance camera,

---

[53]Defendant's Reply, p. 7, Docket Entry No. 30, p. 11.

[54]Plaintiff's Opposition, p. 3, Docket Entry No. 28, p. 7.

[55]Leslie Declaration, Exhibit A in Appendix to Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 3 ¶ 8, Docket Entry No. 29-1, p. 4 ¶ 8.

[56]Defendant's Reply, pp. 1-2, Docket Entry No. 30, pp. 5-6.

[plaintiff's] testimony about that issue is inadmissible."[57]
Defendant also objects to plaintiff's statement in ¶ 8 that he
"felt that [he] was under increased and heightened level of
surveillance," as speculative, conclusory, and failing to establish
that plaintiff was, in fact, under increased surveillance following
his complaint about Vickers.[58]

    Rule 56(c)(4) states that that "[a]n affidavit or declaration
used to support or oppose a motion must be made on personal
knowledge, set out facts that would be admissible in evidence, and
show that the affiant or declarant is competent to testify on the
matters stated." Because defendant does not dispute that plaintiff
worked in the engine room or that the engine room was equipped with
a surveillance camera, plaintiff is competent to testify that he
saw the camera moving during his shifts, and that the camera's
movements appeared to track his movements and made him feel that he
was being subjected to increased surveillance.  See Cutting
Underwater Technologies USA, Inc. v. Eni U.S. Operating Co., 671
F.3d 512, 516 (5th Cir. 2012) (per curiam) ("Personal knowledge may
be demonstrated by showing that the facts stated 'reasonably' fall
within the 'sphere of responsibility' of the affiant as a corporate
employee."); C.R. Pittman Construction Co., Inc. v. National Fire
Insurance Co. of Hartford, 453 F. App'x 439, 442-43 (5th Cir. 2011)

---

[57]Id. at p. 2, Docket Entry No. 30, p. 6.

[58]Id.

-34-

(per curiam)(recognizing that affidavits based on personal knowledge can suffice to create a fact issue even if arguably self-serving). Accordingly, defendant's objections to ¶ 8 of plaintiff's declaration will be overruled.

Citing Grice v. FMC Technologies, Inc., 216 F. App'x 401 (5th Cir. 2007)(per curiam), defendant argues that increased surveillance cannot, as a matter of law, support a retaliation claim.[59] In Grice the plaintiff alleged that the defendant retaliated against him by, inter alia, "watch[ing] him more closely than others." Id. at 404. Adverse actions sufficient to support claims of retaliation are not limited to ultimate employment decisions but are, instead, actions that a reasonable employee would have found materially adverse. Id. at 407. In this context "materially adverse" means an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006)). The Fifth Circuit explained that "[m]aterially adverse is distinct from 'trivial harms[,]'" id., and that "'[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" Id. (quoting Burlington Northern, 126 S. Ct. at 2415). The Fifth Circuit then held that

---

[59]Id. at p. 8, Docket Entry No. 30, p. 12.

> Grice cannot prevail on his retaliation claim. The
> allegedly retaliatory incidents of which Grice complains
> are either unsupported by the record or so "trivial" that
> they do not appear to be the sort of actions that would
> dissuade a reasonable employee from reporting
> discrimination.

Id.

Plaintiff's contention that he was placed under increased surveillance in retaliation for having complained of race discrimination is, like the complaint made in Grice, too trivial to support a retaliation claim because increased surveillance is not the sort of action that would dissuade a reasonable employee from reporting discrimination. See Earle v. Aramark Corp., 247 Fed.Appx. 519, 524 (5th Cir. 2007) (holding that allegedly retaliatory micro-managing of plaintiff's performance did not constitute materially adverse employment action sufficient to support a retaliation claim). See also EEOC v. Bass Pro Outdoor World, LLC, No. 4:11-CV-3425, 2013 WL 1124063, at *6 (S.D. Tex. March 18, 2013) ("close scrutiny . . . [is] not considered adverse action[]" sufficient to state a retaliation claim); Soublet v. Louisiana Tax Commission, 766 F.Supp.2d 723, 735 (E.D. La. 2011) ("complaints of increased or altered supervision . . . would not dissuade a reasonable worker from making or supporting a charge of discrimination").

### III. **Plaintiff's Rule 56(d) Motion for Additional Discovery**

Asserting that investigation into the facts of this case is not complete, and that for that reason he is unable to present all the facts that will allow a reasonable jury to conclude that the law was violated, plaintiff seeks relief from having to prepare a complete response to defendant's motion for summary judgment under Federal Rule of Civil Procedure 56(d). Citing his attorney's declaration, plaintiff argues that "[i]f the Court is at all inclined to rule adversely to [him], [he] seeks the additional time for discovery that the discovery deadline permits to allow him to gather additional information."[60] Plaintiff explains that

> [n]otwithstanding the pending written discovery disputes, there is still more discovery to be had in the months remaining before the close of discovery. Information surrounding [plaintiff's] transfer and compensation is incomplete as to [plaintiff's] employment history with [d]efendant. Furthermore, investigation to whether [d]efendant, in fact, took prompt remedial measures is still incomplete. More importantly, Brandon Balducci and Joe Knight's depositions have not been completed because important documents have yet to be supplied by [d]efendant.[61]

Defendant argues that plaintiff's motion for additional discovery should be denied because plaintiff has not diligently pursued discovery and has failed to specify how additional discovery could raise a genuine issue of material fact for trial.[62]

---

[60]Plaintiff's Opposition, p. 13, Docket Entry No. 28, p. 17 (citing Declaration of Chukwudi Egbuonu ("Egbuono Declaration"), Exhibit B in Appendix to Plaintiff Ivan Leslie's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Docket Entry No. 29-2).

[61]Id. at 14, Docket Entry No. 28, p. 18.

[62]Defendant's Reply, pp. 1, 11-12, Docket Entry No. 30, pp. 5,
(continued...)

Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Rule 56(d) functions as a safe harbor that has been built into the rules so that summary judgment is not granted prematurely. See Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129, 136 (5th Cir. 1987) (referring to former Rule 56(f)). Rule 56(d) motions are "broadly favored and should be liberally granted." Prospect Capital Corp. v. Mutual Bank of Omaha Bank, 819 F.3d 754, 757 (5th Cir. 2016) (quoting Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (referring to former Rule 56(f)). Nevertheless, "parties seeking Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" Id. (quoting Raby, 600 F.3d at 561). "Instead, a party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" Id. (quoting Raby, 600 F.3d at 561). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary

---

[62] (...continued)
15-16.

judgment." <u>Raby</u>, 600 F.3d at 561 (quoting <u>Access Telecom, Inc. v.</u>
<u>MCI Telecomm Corp.</u>, 197 F.3d 694, 720 (5th Cir. 1999)). <u>See also</u>
<u>Washington v. Allstate Insurance Co.</u>, 901 F.2d 1281, 1285 (5th Cir.
1990) ("This court has long recognized that a plaintiff's
entitlement to discovery prior to a ruling on a motion for summary
judgment is not unlimited, and may be cut off when the record shows
that the requested discovery is not likely to produce the facts
needed by the plaintiff to withstand a motion for summary
judgment."). If, moreover, the party seeking Rule 56(d) relief
"has not diligently pursued discovery, . . . she is not entitled to
relief." <u>McKay v. Novartis Pharmaceutical Corp.</u>, 751 F.3d 694,
700 (5th Cir. 2014) (quoting <u>Beattie v. Madison County School</u>
<u>District</u>, 254 F.3d 595, 606 (5th Cir. 2001)).

Plaintiff argues that he seeks additional discovery because
the investigation into whether the defendant, in fact, took prompt
remedial measures is still incomplete, and that the depositions of
Brandon Balducci and Joe Knight have not been completed because the
defendant has not yet supplied important documents. The
declaration of plaintiff's attorney submitted in support of
plaintiff's request for relief under Rule 56(d) states that
"[b]ecause discovery is not yet complete and we anticipate the
filing of a motion to compel discovery responses and additional
depositions are required in this case, I also write in support of

the plaintiff Fed. R. Civ. P. 56(d) motion."[63]  The only disputed
fact issue that plaintiff identifies as relevant to defendant's
summary judgment motion is whether defendant took prompt remedial
action.  Plaintiff argues that his investigation into this issue is
still incomplete, and that Brandon Balducci's and Joe Knight's
depositions have not been completed because important documents
have yet to be supplied by the defendant.  Plaintiff however fails
to identify what important documents have yet to be supplied, or
what relevant facts are likely to be revealed by deposing Balducci
or Knight.  Such vague assertions that additional discovery might
produce needed, but unspecified, facts are legally insufficient to
sustain plaintiff's burden under Rule 56(d).  Because the burden is
on the party requesting additional discovery to show how the
potential discovery, if obtained, will influence the outcome of the
summary judgment motion, plaintiff's failure to do so weighs
against granting the plaintiff's Rule 56(d) motion.

Asserting that plaintiff "first served written discovery on
November 16, 2016 — just two weeks before the summary judgment
deadline and almost six months after entry of the Docket Control
Order," that "even after Noble moved for summary judgment,
[plaintiff] still *never requested* depositions," and that Noble
timely responded by answering interrogatories and producing 856

---

[63]Egbuonu Declaration, Exhibit B in Appendix to Plaintiff Ivan
Leslie's Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment, Docket Entry No. 29-2, ¶ 3.

pages of documents on December 16, 2016,[64] defendant argues that plaintiff's Rule 56(d) motion should be denied because "[plaintiff] has not diligently sought discovery and failed to adequately demonstrate how additional discovery could assist him in overcoming [defendant's] motion."[65]

The Docket Control Order (Docket Entry No. 16) entered on May 27, 2016, required mediation to take place by October 7, 2016, and set a deadline for the filing of dispositive motions thirty (30) days after the mediator or magistrate judge declared an impasse. The Docket Control Order also set a discovery deadline of February 24, 2017. On August 5, 2016, the parties filed a Joint Motion to Extend Settlement Conference Deadline (Docket Entry No. 18), which the court granted by Order (Docket Entry 19) entered on August 8, 2016. The settlement conference was held before Magistrate Judge Johnson on November 1, 2016, and a minute entry filed that day states that the case did not settle. The undisputed evidence establishes that plaintiff waited until November 16, 2016, over two weeks after the magistrate judge declared an impasse, to serve discovery, and that even after defendant filed a motion for summary judgment on December 1, 2016, plaintiff failed to request depositions. This evidence demonstrates that the plaintiff has not diligently pursued discovery.

---

[64]Defendant's Reply, pp. 11-12, Docket Entry No. 30, pp. 15-16 (citing Declaration of Marc H. Klein, Exhibit A to Defendant's Reply, Docket Entry No. 30-1, ¶¶ 3-4).

[65]Id. at p. 12, Docket Entry No. 30, p. 16.

Because plaintiff has failed to diligently pursue discovery, and has failed to show how additional discovery could influence the outcome of defendant's summary judgment motion, plaintiff's request for Rule 56(d) relief will be denied.

### IV.   <u>Conclusions and Order</u>

For the reasons stated in § II.C, above, the court concludes that plaintiff has failed to present evidence from which a reasonable fact-finder could conclude that he was subjected to a hostile work environment, or that the defendant retaliated against him for having complained of race discrimination.

For the reasons stated in § II.C.2, above, defendant's objections to plaintiff's summary judgment evidence are **OVERRULED**.

For the reasons stated in § III, above, the court concludes that plaintiff has failed to diligently pursue discovery, and has failed to show how additional discovery could influence the outcome of defendant's summary judgment motion.   Accordingly, Plaintiff Ivan Leslie's . . . [Request for] Relief Under Rule 56(D) (Docket Entry No. 28) is **DENIED**.

Defendant's Motion for Summary Judgment (Docket Entry No. 23), is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 17th day of March, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-42-